**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| PATRICIA KAYE LUMPKIN, | ) | CASE NO. 1:20-CV-01849-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Patricia Lumpkin ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On November 22, 2017, Claimant filed applications for DIB and SSI, alleging a disability onset date of October 20, 2009. (ECF No. 12, PageID #: 443). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 392). On May 20, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 316). At the hearing, Claimant moved to amend the alleged onset date to the

1

protective filing date, November 6, 2017. (ECF No. 12, PageID #: 320–21). On June 11, 2019, the

ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 64). The

ALJ's decision became final on June 15, 2020, when the Appeals Council declined further review.

(ECF No. 12, PageID #: 58).

On August 19, 2020, Claimant filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 15, 16).

Claimant asserts the following assignments of error:

> (1) The ALJ's Residual Functional Capacity erroneously failed to consider the totality of Claimant's impairments, including failing to properly consider Social Security Rulings 02-1p and 14-2p.

> (2) The ALJ committed harmful error in his determination regarding credibility as his finding was not supported by substantial evidence and violated Social Security Ruling 16-3p.

> (3) The ALJ committed harmful error when he did not meet his burden at Step Five of the Sequential Evaluation when he failed to include the need for a cane for balance and ambulation in his RFC.

(ECF No. 13 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleges that she cannot sustain full time employment due to a combination of symptoms from her impairments including sleep apnea, high blood pressure, type 2 diabetes, neuropathy, anxiety, degenerative disc disease, bulging disc disease, obesity, and depression (2E/2; 6E; 13E; 2F; 4F; hearing testimony). She reported that her lower back, feet, hips, and hands are in constant pain throughout the day, described it as an 8/10 with pain medication, rated it a 10/10 without medication (hearing testimony). Since November 2017, the claimant reported that her impairments have worsened, stating she experiences poor sleep and pain (hearing testimony). The claimant testified that her symptoms are aggravated by exertion and cold and helped with pain cream, ice/heat, her TENS

2

unit, and elevating her legs. She testified that due to her physical symptoms, she can only sit for approximately 30 minutes, stand for 15 minutes, walk for 30 minutes, and lift 5-7 pounds comfortably (hearing testimony).

The claimant also alleges that her mental health conditions contribute to her disabling symptoms. She testified that she lives with her 15-year-old son, reporting that he performs approximately 90% of the household chores because she is unable due to her symptoms (hearing testimony). She also reported that at times she gets confused, has decreased motivation, experiences anxiety around other people, and does not handle stress well (6E; 4F; hearing testimony).

(ECF No. 12, PageID #: 73).

## B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

The claimant has a documented history of several severe physical impairments that cause some level of limitation, but which are not work preclusive. Objective imaging from October 2016 and May 2017 showed mild degenerative changes of the lumbar spine (2F/52-53, 125-132). The claimant also reported hip pain after a fall in August 2017, and an x-ray revealed degenerative changes of the right hip but no acute fracture or dislocation was noted (2F/123). She continued to report worsening pain described as intermittent and with radiation from the lower back to the right hip with bilateral lower extremity numbness and tingling, and the pain is exacerbated by forward flexion and standing in one position for too long (5F/41). The physical exam notes throughout the relevant period indicate the claimant reported hip pain with tenderness and palpation over the paraspinal muscles, and some diminished range of motion (2F; 3F; 5F/5, 24, 33). However, the physical exam notes also indicate that she had 5/5 upper and lower extremity strength, negative straight leg raise, and full cervical range of motion (5F/42). The notes also indicate that the claimant continues to pursue a conservative management of her hip pain, and that a hip arthroplasty is possible in the future, but also indicate she exhibited no instability on exam (5F/24, 33).

The claimant continued to report hip pain throughout the relevant period. The claimant had an MRI of the right hip on October 23, 2018, which revealed severe end-stage osteoarthritis of the right hip (5F/122). Notes from a physical exam in December 2018 indicate

3

that claimant had tenderness to palpation over the right lateral hip, mild groin pain with flexion, 50 degrees external rotation and 20 degrees internal rotation, 0-120 motion over knee, no instability on exam and sensory was intact to light touch (5F/33). Treatment records indicate she received a toradol injection on June 27, 2018; a corticosteroid injection in the right lateral hip on December 14, 2018; and left and right hip bursa injection on February 6, 2019 (5F/15, 33, 66). Additionally, the undersigned notes that the claimant appeared at the hearing with a cane, but there is no mention in the medical record for a prescription or use of a cane or assistive device (hearing testimony).

The claimant also has a history of obstructive sleep apnea. However, the records do not show that a sleep study was performed and there are references throughout the records that the claimant has a CPAP machine at home, but notes indicate her CPAP was broken and she was not using it (2F/5, 10. 15, 21; 3F; 5F/3, 52, 63). The records also indicate that the claimant underwent a pharmacologic stress myocardial perfusion scan, on February 14, 2018, but it was unremarkable (3F/5).

The claimant also reported a history of mental health symptoms from depression and anxiety (4F). The claimant reported decreased motivation, and stated that she is able to follow instructions without problems but that her mind is "just slow" (6E/6). She reports that she does not handle stress well and that stress exacerbates her depression, but she can handle changes in routine (6E/7). The records show that the claimant manages her mental health symptoms with medication, including Cymbalta, prescribed by her primary care provider, but that she does not receive any other mental health treatment (2F; 3F; 4F; 5F).

The claimant attended a psychological consultative examination with Natalie Whitlow, Ph.D., on June 20, 2018 (4F). She reported that her depression and anxiety symptoms keep her from working because she has days where [she] does not get out of bed, has no desire to do anything, to move, or go anywhere (4F/2). She also reported that she gets confused at times and has anxiety around other people thinking that they are talking about her (4F/2). She also reported that her symptoms are managed with prescribed medication, stating that her depression was not as bad with the Cymbalta and helps her be able to be around small groups of people (4F/3). At the exam, the claimant denied any current behavioral treatment, though reported that approximately three months before she had engaged in psychiatric treatment but discontinued it due to the office location being inconvenient (4F/4). She also reported

4

having a history of 2 mental health hospitalizations for suicide attempts in the 1980's but did not recall where she was hospitalized or for how long (4F/4). The exam notes indicate the claimant appeared appropriately dressed and groomed, her thought processing and speech were within normative range of functioning, and she had stable and appropriate affect (4F/4-5). The claimant appeared to possess average cognitive functioning, fair insight and judgment, but she reported her functioning was intermittently motivated and impacted by her mental health symptoms (4F/6). Overall, she was diagnosed with persistent depressive disorder, with mood-incongruent psychotic features; and unspecified anxiety disorder (4F/7). Dr. Whitlow went on to give a fair prognosis due to the mild and generally well managed level of severity of her reported symptoms, the longstanding history of her symptoms with no reported increase in the frequency, intensity or severity of her symptoms over time, and no observed or specific reports that her symptoms impair any aspect of her functioning (4F/7).

Additionally, the claimant is further limited by her obesity. Concerning the claimant's obesity, the National Institute of Health (NIH) established medical criteria for the diagnosis of obesity classifying overweight and obesity in adults according to Body Mass Index (BMI), which is the ration of an individual's weight in kilograms to the square of his or her height in meters. For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.0 as "overweight" and BMI of 30.0 kg/m2 or above as "obesity." (See also SSR 19-2p.) The records in this case reflect a BMI between 40-54 (2F; 3F; 5F). The undersigned also notes that the claimant underwent laparoscopic sleeve gastrectomy on May 3, 2018 (3F/8). The records reflect that since her May 2018 surgery, the claimant has lost weight and her BMI has decreased, however, it can be concluded that the claimant's obesity could be expected to exacerbate her back and hip pain causing significant physical limitations, and compound difficulties related to hypertension, neuropathy, and diabetes, which are accounted for in the residual functional capacity described herein (3F;5F).

(ECF No. 12, PageID #: 73–75).

## C. Opinion Evidence at Issue

### 1. State Agency Consultants

Rannie Amiri, M.D., and Leslie Green, M.D., gave their opinions regarding Claimant's physical impairments and limitations on January 19, 2018 and July 16, 2018 respectively. They

5

both opined that Claimant was limited to a reduced range of light work but could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally stoop and crawl; and frequently kneel and crouch. (ECF No. 12, PageID #: 351–53, 366–68). The ALJ found both opinions persuasive, stating:

> [T]hey are consistent with the medical records, the physical exam findings, objective imaging, and claimant's reports. The objective imaging of the claimant's lumbar spine and right hip, as well as her gastrectomy surgery, support some level of physical limitation which has been accounted for in the residual functional capacity described herein, but does not preclude all work activity.

(ECF No. 12, PageID #: 76).

The ALJ summarized the opinions of the State agency consultants regarding Claimant's mental health symptoms:

> At the initial level, Dr. Savitscus noted that the medical evidence and treatment records did not support a finding of mental medically determinable impairment, and therefore there was insufficient evidence to make any specific findings as to mental limitations (1A/5). At the reconsideration level, Dr. Warren reviewed the findings from the June 2018 consultative examination and opined the claimant did not have limitations in any of the four areas of mental functioning.

(ECF No. 12, PageID #: 76).

The ALJ found these opinions persuasive, explaining:

> [T]hey are consistent with the medical evidence of record and are informed by program knowledge (1A; 3A). Specifically, despite the claimant's reported disabling mental health symptoms, the consultative examination revealed no observed mental limitations or signs of anxiety, the claimant was alert, oriented, appropriate, and had fair insight and judgment (3A/11; 4F). The medical evidence of record also shows that the claimant's mental health symptoms were managed during the relevant period conservatively with prescribed medication. For these reasons, the undersigned finds the State agency consultants' opinions persuasive but includes additional mental limitations based on subsequent treatment records and the claimant's subjective reports.

6

(ECF No. 12, PageID #: 76–77).

### 2.  Consultative Examiner — Natalie Whitford, Ph.D

Natalie Whitford, Ph.D., performed a consultative exam on June 20, 2018 and submitted an opinion. (ECF No. 12, PageID #: 726–35). Dr. Whitlow diagnosed Claimant with depressive disorder with mood-incongruent psychotic features and unspecified anxiety disorder. (ECF No. 12, PageID #: 732). She noted that the Claimant has mild and generally well managed symptoms and gave a fair prognosis. (ECF No. 12, PageID #: 732). She also opined that Claimant did not have limitations in any of the four areas of mental functioning. (ECF No. 12, PageID #: 734).

The ALJ found this opinion persuasive because it was "consistent with the mental consultative examination" and the medical evidence of record and "supported by the conservative course of mental treatment evidenced in the records during the relevant period." (ECF No. 12, PageID #: 77).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2.  The claimant has the following severe impairments: diabetes mellitus with neuropathy; mild degenerative changes of the lumbar spine; severe end stage osteoarthritis of the right hip; obstructive sleep apnea; essential hypertension; obesity; depression; and anxiety (20 CFR 416.920(c)).

> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently operate right foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be

exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; frequently be exposed to extreme cold; limited to performing simple, routine, and repetitive tasks, but not at a production pace (i.e. assembly line work); limited to simple work related decisions in using her judgment and dealing with changes in the work setting; and able to frequently interact with supervisors, coworkers, and the public.

(ECF No. 12, PageID #: 69–72).

## V.  Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal. First, Claimant argues that the ALJ failed to consider the totality of her impairments in his Step Three Listing analysis. Second, Claimant asserts that the ALJ's credibility determination was not supported by substantial evidence and violated Social Security Ruling 16-3P. Third, Claimant alleges the ALJ erred by failing to include Claimant's need for a cane in the RFC.

### 1. Step Three Listing Analysis

Claimant's first assignment of error alleges that the ALJ failed to properly consider three social security rulings: (1) SSR 14-2p—Evaluating Diabetes Mellitus—(2) SSR 02-1p—Evaluation of Obesity—and (3) the Part B criteria of Listing 11.14—Peripheral neuropathy.

In his Step Three analysis, the ALJ concluded that Claimant has multiple severe medically determinable physical impairments but that none of them met the requirements of any listed impairments. (ECF No. 12, PageID #: 70). He specifically considered the following listings:

> 1.02—Major Dysfunction of a Joint
> 1.04—Disorders of the Spine
> 11.14—Peripheral Neuropathy
> 4.00H(1)—Cardiovascular Impairments
> 9.00B(5)—Diabetes mellitus and other pancreatic gland disorders
> 12.04—Depressive, bipolar and related disorders
> 12.06—Anxiety and obsessive-compulsive disorders

(ECF No. 12, at 69–72).

### a. SSR 14-2p.

Claimant first argues that although the ALJ discussed her diabetes under Listing 9.00(b)(5), he failed to evaluate it in accordance with SSR 14-2p. SSR 14-2p states that Diabetes Mellitus (DM) is no longer a listed impairment under the regulations. SSR 14-2p, 2014 WL 2472008, at *6. However, it explains that "the effects of DM, either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s)." *Id.*

Claimant alleges that the ALJ failed to evaluate her diabetes in combination with her other impairments. Claimant contends that the ALJ did not consider the effect the combination of

10

diabetes and neuropathy had on her.[1] (ECF No. 13 at 11–12). Commissioner responds that the ALJ

properly considered Claimant's neuropathy and found, based on the objective evidence, that it did

not result in the extreme limitation required by the listing.

With regards to diabetes, the ALJ stated:

> [A]ccording to Medical Listings 4.00H(1), and Listing 9.00B(5),
> hypertension and diabetes mellitus are evaluated by reference to the
> specific body system affected. Because hypertension (high blood
> pressure) and diabetes generally causes disability through its effects
> on other body systems, the undersigned will evaluate these
> impairments by reference to the specific body system affected
> (heart, brain, kidneys, or eyes) when considering its effects under
> the Listings. The undersigned will also consider any limitations
> imposed by the claimant's hypertension or diabetes when assessing
> the claimant's residual functional capacity. . . . [T]he claimant's
> diabetes has not resulted in any complications or end organ damage
> that would meet or equal any of the Listings referenced under
> Medical Listing 9.00B(5). The undersigned has considered these
> severe impairments and any related limitations, considered in
> combination with other impairments as well, when assessing the
> claimant's residual functional capacity.

(ECF No. 12, PageID #: 70–71). The ALJ also considered Listing 11.14—peripheral neuropathy.

He concluded:

> To meet this listing claimant must have a disorganization of motor
> function in two extremities resulting in an extreme limitation in the
> ability to stand up from a seated position, balance while standing or
> walking or use the upper extremities. An extreme limitation means
> that once seated you are unable to stand and maintain an upright
> position without the assistance of another person or the use of an

---

[1]    Claimant also alleges that she had diabetes with "obesity, obstructive sleep apnea, degenerative changes in her lumbar spine, psychological problems, and severe end stage osteoarthritis of the right hip." (ECF No. 13 at 12). She asserts that "[f]ailure to evaluate her diabetes in conjunction with the other impairments constituted harmful error in this matter as the combination of her impairments caused greater limitations than reflected by the ALJ in his RFC." (ECF No. 13 at 12). However, Claimant does not provide any support or evidence for her blanket statement. Commissioner asserts that Claimant waived this argument by failing to sufficiently support it. The Court agrees. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566–57 (6th Cir.1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997)).

assistive device, such as a walker, two crutches, or two canes; you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes; or a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits the ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. While the claimant alleges that she has pain, tingling, and numbness in both legs below the knees, and has to use a cane to walk, these limitations do not meet the requirements necessary to find an extreme limitation as described.

(ECF No. 12, PageID #: 70).

Claimant asserts that "[t]he medical evidence from the relevant time period clearly established that Lumpkin had diabetic neuropathy" because, during her examinations, "it was noted that she had tingling [] and decreased sensation to vibration on the right." (ECF No. 13 at 11). She claims that these findings were "erroneously not addressed by the ALJ in his decision." (ECF No. 13 at 11). This assertion is without merit. The ALJ specifically found that Claimant suffered from diabetes mellitus with neuropathy. (ECF No. 12, PageID #: 69). Notwithstanding, he also found that it did not meet the requirements of the listed impairment. (ECF No. 12, PageID #: 70). In making this decision, the ALJ explicitly recognized that Claimant alleged tingling and numbness in her legs. Tingling and numbness in the legs, however, do not rise to the level of a disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking or use the upper extremities. Claimant does not point to any medical evidence in the record that supports a finding that she met these criteria, and, on its own review, the Court finds none. In fact, physical examination showed no instability. (ECF No. 12, PageID #: 779). The Court, therefore, finds the ALJ did not err in consideration of Claimant's diabetes.

**b.  SSR 02-1p**

Next, Claimant argues that the ALJ erroneously failed to apply Social Security Ruling 02-1p. "SSR 02–1p offers detailed guidance on how to assess obesity in conjunction with other impairments." *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x. 956, 959–60 (6th Cir. 2015) (citing *Norman v. Astrue*, 694 F. Supp. 2d 738, 741–42 (N.D. Ohio 2010)). However, SSR 19-2p rescinded and replaced SSR 02-1p, applying to "new applications filed on or after the applicable date of the SSR and *to claims that are pending on and after the applicable date*." SSR 19-2p, 2019 WL 2374244, at *5 n.14. The applicable date was May 20, 2019 and the regulation clearly directed the ALJ to apply SSR 02-1p to all decisions involving obesity made after it. *Id.* The ALJ here made his decision on June 11, 2019, after the applicable date. As such, the ALJ properly applied SSR 19-2p.

SSR 19-2p states that obesity is not a listed impairment. *Id.* at *4. However, the functional limitations caused by obesity, "alone or in combination with another impairment(s), may medically equal a listing" by sufficiently increasing the severity of a coexisting impairment. *Id.* Here, the ALJ considered Claimant's obesity and the fact that she had laparoscopic sleeve gastrectomy surgery. He concluded that "[C]laimant's obesity could be expected to exacerbate her back and hip pain causing significant physical limitations, and compound difficulties related to hypertension, neuropathy, and diabetes, which are accounted for in the residual functional capacity described herein." (ECF No. 12, PageID #: 75).

Claimant argues that "[a]lthough the ALJ mentioned Lumpkin's obesity as a severe impairment, he erred when he failed to assess it in light of the relationship between her obesity and her diabetic, musculoskeletal, and respiratory problems. . . . . [Claimant's] obstructive sleep apnea resulted in fatigue [] along with severe pain." (ECF No. 13, at 13). Claimant does not explain what more the ALJ was required to do or point to any objective evidence indicating that her sleep

13

apnea imposed limitations on her. Claimant bears the burden at Step Three. She "had the burden of showing specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC determination." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017), *report and recommendation adopted* by 2017 WL 2908857 (N.D. Ohio July 7, 2017) (alterations in original) (citations omitted). Claimant did not meet this burden. *See id.* (stating that the claimant did not meet her burden where she failed to point to specific evidence of how the ALJ's RFC limitation was inconsistent with her actual impairments). The Court, therefore, finds no error.

### c.  Listing 11.14

Claimant additionally argues that the ALJ erroneously failed to address the Part B criteria of Listing 11.14. At Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). The ALJ "need not discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raises a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing. *Id.* (alteration in original) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990). "Failure to provide sufficient articulation of Step Three is error." *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *4 (E.D. Mich. Jan. 22, 2016). Nevertheless, that fact that the ALJ failed to specifically discuss a listing "does not require a remand if the ALJ 'made sufficient factual findings elsewhere in his decision to support his conclusion at step three.'" *Stamper v. Berryhill*,

14

No. 5:16-131-KKC, 2017 WL 4287199, at *2 (E.D. Ky. Sept. 27, 2017) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

To meet Listing 11.14's B criteria, the claimant must have: (1) a marked limitation in physical functioning, and (2) a marked limitation in one of the following: a) understanding, remembering, or applying information; b) interacting with others; c) concentrating, persisting, or maintaining pace; or d) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14 (B). The Claimant is correct that the ALJ did not discuss Listing 11.14's B criteria. The Claimant focuses her argument on providing evidence that Claimant had a marked limitation in physical functioning, meeting the first requirement. The Commissioner, however, rightly observes that the ALJ made findings regarding the second requirement that Claimant does not challenge.

When discussing the severity of Claimant's mental impairments, the ALJ concluded that Claimant had a: (1) moderate limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting and managing herself. (ECF No. 12, PageID #: 71). Thus, the ALJ made findings in his opinion that preclude Claimant from meeting the Part B criteria. As such, remand is not required. *Stamper*, 2017 WL 4287199, at *2.

### 2. The ALJ's Credibility Determination

In her second assignment of error, Claimant argues that the ALJ's credibility determination violated SSR 16-3P and was, therefore, not supported by substantial evidence. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. The ALJ is required to use a two step-process. *Id.* at *3. First, the ALJ determines whether the individual has a medically

determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms. *Id.* at *4. In so doing, the ALJ should consider the evidence provided and, when relevant, seven factors listed in SSR 16-3p. The factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or symptoms; (5) treatment other than medication for the relief of pain or symptoms; (6) any other measures used to relieve pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain and other symptoms. *Id.* at *7–8. The ALJ need not discuss all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.

16

The ALJ's determination of credibility is given "great weight" because he, unlike the Court, has the opportunity to observe the claimant's demeanor while testifying. *Jones*, 336 F.3d at 476 (citations omitted). However, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

In considering Claimant's subjective allegations of pain, the ALJ found that Claimant's statements concerning the intensity, persistence and limiting effect of her symptoms were not entirely consistent with the medical evidence in the record. (ECF No. 12, PageID #: 73). Throughout his opinion he pointed out inconsistencies between Claimant's pain and the objective evidence. He additionally explained that her statements:

> are inconsistent because the treatment records, the physical and mental exam findings, and the claimant's reports and activities do not support the disabling level of symptoms alleged. The claimant reported that she is unable to sustain work because of her exertional limitations from lower back, feet, hip, and hand pain, however her alleged level of pain is unsupported by the medical evidence of record. The objective imaging shows severe end-stage osteoarthritis of the right hip, and some mild degenerative changes of the lumbar spine, and some level of limitation is provided to accommodate her physical restrictions, but does not preclude all work activities.
>
> As for the claimant's mental health symptoms, the records do not support the disabling level alleged. She testified that she maintains a driver's license, driving herself to church two times per week and to doctor's appointments (hearing testimony). She also testified that she remembers to perform self-care including brushing her teeth, bathing, and taking medication; and that she visits with her adult daughter and grandchildren 3-4 times per month (hearing testimony). Despite the claimant's reports of anxiety and depressive symptoms, explaining she has decreased motivation and energy, and

17

has anxiety being around other people, she testified that she attends church two times per week including a Bible study, and visits with her daughter and grandchildren about one time per week. The claimant also testified that she watches television regularly, reads books, studies the Bible, uses the internet and social media to keep up with current events, and she is able to make change and count money, demonstrating a range of reported mental abilities and activities (hearing testimony). She also reported in the consultative examination that her mental health symptoms are managed and improved with prescribed medication, and she stated that she was not as depressed with the medication and it helps her to be around people in small groups (4F/3). Finally, the claimant testified that she recently renewed her cosmetology license this year and that she passed her continuing education testing requirements for the license in 2018, suggesting her mental symptoms are not as debilitating as alleged.

(ECF No. 12, PageID #: 75–76).

Claimant argues that the ALJ "erroneously failed to properly consider [Claimant's] disabling pain and the fact that it would likely result in her inability to sustain and/or maintain attention and concentration along with the resulting inability to stand/walk for the six hours per day as required by work at the light level of exertion." (ECF No. 13, PageID #: 895). She states that the ALJ "failed to even mention" the evidence that supported her disability. (ECF No. 13, PageID # 895). Commissioner responds that the ALJ "thoroughly considered [Claimant's] subjective complaints and incorporated them into the RFC." (ECF No. 15, PageID #: 921). The Court agrees.

The ALJ considered the relevant factors listed in SSR 16-3P and gave specific reasons for discrediting Claimant's subjective complaints. He first recognized Claimant's allegations of pain, remarking that Claimant alleged that she could not work because of various impairments and lower back, feet, hip, and hand pain. (ECF No. 12, PageID #: 73, 75). The ALJ specifically stated that he included some mental limitations in the RFC to accommodate Claimant's subjective complaints. (ECF No. 12, PageID #: 77).

18

Then, the ALJ discussed Claimant's daily activities and how they were inconsistent with her alleged mental impairments. He noted that Claimant had a driver's license, drove herself to church twice a week, performed self-care, read books, and used the internet and social media. (ECF No. 12, PageID #: 75–76). He observed that Claimant was able to make change and count money. (ECF No. 12, PageID #: 76). Moreover, the ALJ recognized that Claimant recently renewed her cosmetology license and passed her continuing education testing requirements for the license in 2018. (ECF No. 12, PageID #: 76). Despite claims of anxiety being around others, Claimant attended Bible study every week and visited with her daughter and grandchildren multiple times a month. (ECF No. 12, PageID #: 75). The ALJ found that such activities were inconsistent with a finding of total disability. (ECF No. 12, PageID #: 75–76). *See Roth v. Colvin*, 3:15CV1974, 2017 WL 4511353, at *12 (N.D. Ohio Mar. 22, 2017) ("[I]t was not unreasonable for the ALJ to conclude that plaintiff's ability to maintain a wide range of activities indicated that she retained a significant level of mobility and functionality . . . ."); *Hawk v. Astrue*, 4:11CV196, 2012 WL 3044291, at *6 (N.D. Ohio July 25, 2012) ("An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence." (citations omitted)).

The ALJ also noted that Claimant pursues conservative management of her hip pain and manages her mental health symptoms with medication only. (ECF No. 12, PageID #: 74). Claimant reported that her depression was not as bad with her medication and helps her to be around people in small groups. (ECF No. 12, PageID #: 74). The ALJ was free to discredit Claimant's allegations of pain due to the effectiveness of her medication and the improvement of her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (instructing the ALJ to consider the effectiveness and side effects of any medications); *Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10

(S.D. Ohio July 15, 2016) (considering effective treatment a sufficient reason to discredit the claimant's allegations of pain).

Moreover, the ALJ considered the medical evidence and opinions in making his determination. Claimant alleges, however, that, in regard to her mental impairments, the ALJ impermissibly relied on her ability to do some activities on a limited basis as evidence that she could perform light exertional work. This allegation is not completely accurate. While the ALJ did consider Claimant's daily activities in making his credibility determination, as he was instructed to by SSR 16-3P, the ALJ relied on objective medical evidence to support his disability finding. The ALJ specifically relied on the medical opinions of the consultative examiners. The state agency consultants observed no mental limitations or signs of anxiety. They stated that Claimant was alert, oriented, and appropriate. Similarly, Dr. Whitford found that Claimant had mild and generally well managed symptoms. She opined that Claimant did not have any limitations in the four areas of mental functioning. The ALJ also relied on Claimant's own statements that her mental impairments were improved with medication. Thus, there was substantial evidence to support the ALJ's finding. *See Besaw v. Sec'y of Health & Human Servs*., 966 F.2d 1028, 1030 (6th Cir. 1992) ("Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

As for Claimant's physical impairments, the ALJ noted that imaging from October 2016 and May 2017 showed only mild degenerative changes of the lumbar spine. (ECF No. 12, PageID #: 73). The ALJ stated that despite reports of hip pain after a fall in August 2017, an x-ray did not reveal acute fracture or dislocation. (ECF No. 12, PageID #: 73). Similarly, although Claimant reported worsening pain from the lower back to the right hip, the ALJ explained that physical exam notes indicated that Claimant had 5/5 upper and lower extremity strength, negative straight leg

20

raise, and full cervical range of motion. Claimant also exhibited no instability on exam. (ECF No. 12, PageID #: 73–74). As for her allegations of sleep apnea, the ALJ found it relevant that no sleep study was performed. (ECF No. 12, PageID #: 74). Claimant does not point to any medical evidence of sleep apnea. "Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" *Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ also relied on the opinions of the state agency consultants. Claimant asserts that this was error because they were provided before she introduced evidence of an October 2018 MRI and her bariatric surgery, and the use of a cane at the hearing. However, "[a]n ALJ can rely on a state agency physician's opinion even if they did not review the entire record, as long as the ALJ himself considered the changes in evidence." *Jenkins v. Comm'r of Soc. Sec.*, No. 1:16 CV 584, 2017 WL 1093759, at *7 (N.D. Ohio Mar. 23, 2017). Here, the ALJ recognized that Claimant had an MRI of the right hip done after the opinions were given that revealed severe end-stage osteoarthritis. (ECF No. 12, PageID #: 74). He also observed that notes from a physical exam in December 2018 showed only mild groin pain, 50 degrees external rotations and 20 degrees internal rotation, 0-120 motion over knee, no instability, and sensory intact to light touch. (ECF No. 12, PageID #: 74). Additionally, the ALJ indicated that Claimant used a cane at the hearing but noted that there was no evidence that it was medically prescribed or required. (ECF No. 12, PageID #: 74). Thus, the ALJ did not err by relying on the state agency opinions because he properly considered the additional evidence and still concluded that their opinions were consistent with the medical record.

21

While the Court acknowledges Claimant's allegations of certain limited daily activities, such as being unable to stand for long periods, difficulty going up and down the stairs, and instances of getting stuck on the toilet, it is the not the Court's place to reweigh the evidence. *See Delong v. Comm'r of Soc. Sec.*, 2:18-cv-368, 2019 WL 409364, at *10 (S.D. Ohio Feb. 1, 2019) ("The ALJ's findings were within the ALJ's permissible 'zone of choice,' and the Court will not reweigh the evidence." (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009))). The ALJ clearly articulated his findings and supported them with substantial evidence.  "[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted). Accordingly, the Court is satisfied that the ALJ considered all of the relevant evidence and that a reasonable mind might accept the evidence as adequate support for the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *See Cross*, 373 F. Supp. 2d at 732 ("A court may not disturb the ALJ's credibility determination absent compelling reason.").

### 3. The ALJ's RFC Determination

In her third assignment of error, Claimant argues that the ALJ failed to include Claimant's need for a cane in the RFC. Social Security Ruling 96–9p addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 (footnote omitted).

22

There is no medical documentation establishing the need for a hand-held assistive device. Nonetheless, Claimant argues that the ALJ noting Claimant's use of a cane at the hearing is sufficient to satisfy this requirement. Commissioner responds that there is no medical documentation establishing Claimant's need for a cane and, therefore, the ALJ did not err in his RFC determination. The Court agrees.

SSR 96–9p requires medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p."). Claimant points to no medical record establishing that the cane was medically necessary or the specific circumstances under which it was needed. Accordingly, the ALJ correctly applied SSR 96–9p in finding that the walker was not medically necessary and substantial evidence supports that determination. *See Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018).

## VI.  Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 6, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

23

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).